Bernardo **BARRIENTOS**, Appellant,

v.

**TEXAS EMPLOYERS' INSURANCE ASSOCIATION**, Appellee.

No. 8438.

Court of Civil Appeals of Texas, Amarillo.

March 11, 1974.

Rehearing Denied April 8, 1974.

Smith & Smith, Mark Smith, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Cecil Kuhn, Lubbock, for appellee.

REYNOLDS, Justice.

Dissatisfied with the jury's determination of his average weekly wage and the court's denial of jury-awarded benefits for, and his additional claim regarding, nursing care, plaintiff Bernardo Barrientos seeks to reverse the judgment entered in this workmen's compensation proceeding. Affirmed.

Plaintiff Bernardo Barrientos is a Mexican citizen who, at the time of the trial, was eighteen years of age. He came to the United States in 1969 and went to work on a farm near Runge, in Karnes County, Texas. Following intermittent employment, he moved to Terry County and began working at the Needmore Gin in November, 1971.

While working at the Needmore Gin on December 23, 1971, Barrientos was involved in a tractor accident, suffering serious injury to his back and shoulder. After treatment in the Methodist Hospital in Lubbock, Barrientos was sent to the Bivins Rehabilitation Center in Amarillo. Leaving there, he went back to Runge and later moved to Ropesville, in Hockley County, where he lived with the Augustina Perez family. Mr. and Mrs. Perez cooked his meals, washed his clothes, and assisted him in taking care of his personal needs. Later, he moved to Lubbock County and stayed with the Concepcion Alcorta family, who rendered services similar to those performed for him by the Perez family. On December 18, 1972, Barrientos went to Mexico to stay with his family, and he was living there at the time of the trial in May, 1973.

Defendant Texas Employers' Insurance Association, compensation insurance carrier for the Needmore Gin, stipulated that plaintiff Barrientos was totally and perma-

nently disabled. The trial court refused to permit Barrientos to proceed on his claim for nursing care rendered by his family in Mexico. Responsive to the special issues submitted, the jury found Barrientos' average weekly wage to be $70.00, and the reasonable value of the nursing care rendered by the Perez and Alcorta families to be $1,900.00 and $445.00, respectively. Pursuant to defendant's motion, the court set aside the jury's findings concerning nursing care, and entered judgment in favor of Barrientos for $13,690.96 as workmen's compensation benefits.

Drafting twelve numbered points of error, Barrientos presents four basic complaints. Essentially, the complaints are that the trial court erred in (1) denying recovery for the amount awarded by the jury for nursing care; (2) refusing Barrientos the opportunity to present his claim for nursing services rendered by his family in Mexico; (3) not finding as a matter of law that his average weekly wage was more than $70.00; and (4) failing to instruct the jury that it was entitled to consider Barrientos' prospective increase in wages as he grew older.

The first basic complaint is introduced through points one, two and six. There is no dispute that, under Vernon's Ann.Civ. St. art. 8306, § 7, in effect when Barrientos received the services, the reasonable amount an injured employee expended or incurred for nursing services could be recovered if the insurer refused, neglected or failed to furnish the services within a reasonable time. Disputed, however, is whether Barrientos demanded and was refused nursing services; nevertheless, a resolution of the dispute is not practical, for the action of the court in setting aside the nursing services findings was correct in two respects.

■ In the first instance, Barrientos could recover only for the nursing services expenses he actually paid or incurred. Maryland Casualty Co. v. Hendrick Memorial Hospital, 141 Tex. 23, 169 S.W.2d 969

(1943). The record is devoid of any evidence that Barrientos either expended or incurred any expense for the services furnished him by the Perez and Alcorta families. Barrientos did not testify that he had incurred any expense; and he, Mr. Perez and Mrs. Alcorta all admitted that no payment had been made and that there was no agreement that Barrientos would pay anything.

■ Secondly, and alone decisive, is that there is no evidence of the reasonable value of the services furnished Barrientos by either the Perez family or the Alcorta family. The only testimony bearing on the question of the value of nursing services was given by Reba Church, a registered nurse, practicing in the Brownfield General Hospital in Brownfield, Terry County. Mrs. Church, in detailing the qualifications and duties of registered nurses and licensed vocational nurses, stated the rate of pay commanded by each in Terry County. She stated that "sitters" sometimes are employed to stay with a patient, but that a sitter would not in any way be comparable to a licensed vocational nurse. Mrs. Church specifically testified that she had no knowledge whatsoever of the wages paid in the community for various other capacities or what would be a reasonable fee for a sitter.

In this connection, there is no evidence that any member of either the Perez or Alcorta family was a registered nurse or a licensed vocational nurse, or possessed any comparable skills of either. The most that can be said with respect to the services rendered is that they were similar to those performed by a sitter. Not only is there a complete lack of evidence of the wage rate for a sitter, there is no evidence of the value of any service performed in Hockley County, where the Perez family lived, or in Lubbock County, where the Alcorta family lived.

Because there was no evidence to support the jury's findings respecting nursing services, the trial court was correct in set-

ting them aside. Points one, two and six are overruled.

■ The designated point of error number five is mere argument and fails to contain any assertion of error; therefore, it is insufficient as an assignment of error. Rule 418, Texas Rules of Civil Procedure. The text, however, is closely related to the foregoing points and, since they were overruled, this designated point is also overruled.

The second basic complaint, arising by points three and four, that the court erred in refusing plaintiff the opportunity to present his claim for nursing services furnished by his family in Mexico, requires a background statement. By amended pleadings filed after the May, 1973 trial date was set, plaintiff alleged entitlement to recovery for various nursing services, the furnishing of which it was alleged was refused by defendant. In order to retain the May, 1973 trial setting, plaintiff's counsel agreed with defense counsel to, and so advised the court that he would, produce all witnesses to be used in proving the nursing claims for depositions prior to trial. Plaintiff's mother and sister, by whose testimony he proposed to prove his claim for nursing services rendered in Mexico, were not produced.

On trial date, defendant informed the court that, absent the promised depositions upon which it had relied, it could not announce ready on the claim for nursing services rendered in Mexico, but would announce ready on all other aspects of the case. The court offered plaintiff a continuance which his counsel refused, stating that he desired to proceed to trial and he would rely upon plaintiff's testimony alone in connection with this particular claim. The court then struck plaintiff's pleading alleging this claim over plaintiff's objection, and the case proceeded to trial.

■ Defendant seeks to justify the court's action by reliance on Rule 215a(c), T.R.C.P., and certain judicial decisions confirming a broad discretion in the trial court to impose penalties for violation of discovery orders. The case law relied upon is not controlling because in each case cited the discretion exercised and approved was referenced to the failure by a party to the lawsuit to comply with a discovery order entered by the court. Here, although the court was informed of the discovery agreed upon, no discovery order was entered by the court and the prospective deponent was not a party to this suit.

■ Neither was the court's action in striking the pleadings supported by Rule 215a(c), T.R.C.P. The striking of pleadings is permitted by that rule only if a party or his representative, after having been duly subpoenaed, fails to appear for a deposition. The only remedy available against a non-party witness who had been subpoenaed and fails to appear is a contempt order. Here, the witnesses who were not produced under the agreement were neither parties nor subpoenaed. Accordingly, the court's action in striking plaintiff's pleadings was erroneous.

■ This determination, then, raises the question of whether the error constitutes reversible error. Under this record, it was proposed that this portion of plaintiff's cause of action would be proved by his testimony alone. There is nothing in the record to show, and plaintiff has not brought forward by bill of exception or otherwise any indication, what his testimony would have been on this issue. While admittedly plaintiff could have testified to the services furnished him, there is no basis in this record for an assumption that he possessed the qualifications or the expertise to express an opinion as to the reasonable value of those services. In fact, plaintiff's personal history revealed in the record negates both his qualification and his expertise in this area; and this is particularly true since he offered no evidence as to value in his testimony about the nursing services rendered by the Perez and Alcorta families. On balance, the reasonable

conclusion is that the court's error in striking the pleadings did not amount to such a denial of the rights of plaintiff as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in this case. Rule 434, T.R.C.P. Points three and four are overruled.

Points seven, eight and ten comprise the third basic complaint that the court erred in not setting aside the jury's finding of an average weekly wage of, and finding as a matter of law that it was more than, $70.-00. Premised upon the evidence that prior to his injury he had been earning $1.60 per hour, that he had just started to work ten to twelve hours per day, that he earned $75.69 in the three days immediately prior to his accident, and that, had his injury not occurred, he would have earned $175.00 for the seven day period, Barrientos argues that the jury's wage finding is against the great weight and preponderance of the evidence. The argument is not persuasive in the light of this record. Without elaboration of the specific instances, suffice it to state that Barrientos' employment record since he had been in Texas was spasmodic and irregular. By his own testimony, Barrientos established that in the two and one-half years he remained in this country prior to his accident, he worked a total of about four months. Prior to his employment at the gin, his rate of pay did not exceed $1.25 per hour and was as low as $7.-00 per day.

■■ Barrientos acknowledged that he was presenting his case to the jury on the basis of the "just and fair" computation of average weekly wage as provided for by V.A.C.S. art. 8309, § 1(3). A "just and fair" wage is not a matter of mathematical calculation, but must be fixed by the jury on due consideration of all the facts and circumstances present in the case which tend to establish the earning capacity of the claimant. Southern Underwriters v. Buxton, 136 S.W.2d 264 (Tex.Civ.App.—Beaumont 1940, no writ). In the instant case, the jury was entitled to consider not only the plaintiff's period of maximum earnings, but also the periods of employment and the wage rate earned in that employment. An examination of the record reveals that the jury's finding was not against the great weight and preponderance of the evidence; in fact, the record would have supported a lesser amount than that found by the jury. It follows that the trial court was correct in refusing to set aside the jury's finding of $70.00 as the average weekly wage. Points seven, eight and ten are overruled.

■ Interrelated with the foregoing group of points is point nine by which Barrientos contends the court erred in refusing to permit him to argue to the jury that he could receive no more than $49.00 per week for 401 weeks regardless of the amount of the "just and fair" average weekly wage found by the jury. The contention is without merit. While informing the jury of such matters may not be reversible error, it is considered the better practice not to bring these matters to the attention of the jury, Export Insurance Company v. Johnson, 401 S.W.2d 324 (Tev.Civ.App.—Amarillo 1966, writ ref'd n. r. e.), and cases cited therein, and jury argument in that context is not approved, American Motorists Insurance Company v. Williams, 395 S.W.2d 392 (Tex.Civ.App.—Fort Worth 1965, writ ref'd n. r. e.), since comments calculated to inform the jury of the legal effect of its answers to special issues are condemned. Ex parte Fisher, 146 Tex. 328, 206 S.W.2d 1000 (1947), affirmed, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569 (1948). Point nine is accordingly overruled.

■ The final basic complaint, represented by points eleven and twelve, is that the court failed to instruct the jury, and failed to give plaintiff's requested instruction, that it was entitled to consider Barrientos' prospective increase in wages as he grew older. Aside from the fact that the record is silent as to any requested issue in this regard, the court's charge did indeed contain an instruction, consistent with the

language of V.A.C.S. art. 8306, § 12i, that the jury may consider the minor plaintiff's expected increase in wages. The instruction given was not objected to by plaintiff and, consequently, plaintiff has waived any complaint. Rule 272, T.R.C.P. The final two points of error are overruled.

The judgment is affirmed.